**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FERIDA H. M., | |
|         Plaintiff, | Case No. 22 C 6341 |
|    v. | Magistrate Judge Sunil R. Harjani |
| MARTIN O'MALLEY, | |
| Commissioner of Social Security, | |
|         Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Ferida H. M.[1] seeks to overturn the Commissioner of Social Security Administration's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act. Ferida requests reversal and remand [13], and the Commissioner moves for summary judgment affirming the decision [18][19]. For the reasons discussed below, the Court affirms the ALJ's decision.

### Background

Ferida, currently 58 years old, filed a DIB and SSI application on August 5, 2020, alleging an onset date of June 11, 2020. R. 13, 54. Ferida completed high school in 1984. *Id.* at 270. She previously worked as a bakery assistant, deli associate, line cook, sales associate, and server assistant. *Id.* Ferida alleged disability due to severe anxiety, depression, and post-traumatic stress disorder (PTSD). *Id.* at 16; Doc. [13] at 1. Treatment included therapy and various prescription medications. R. 19.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by first name and the first initial of last name or alternatively, by first name.

Ferida's claims were initially denied on November 24, 2020, and upon reconsideration on March 23, 2021. *Id.* at 13. Upon written request, on October 14, 2021, the ALJ held a telephonic hearing, attended by Ferida, counsel for Ferida, a Bosnian interpreter, and vocational expert ("VE") Lee O. Knutson. *Id.* at 13, 31. On December 1, 2021, the ALJ found Ferida not disabled. *Id.* at 13-25. The opinion followed the required five-step process. 20 C.F.R. § 404.1520. The ALJ found Ferida had the following severe impairments: anxiety, depression, and PTSD. R. 16. The ALJ also noted the objective medical record documented hypertension, urinary incontinence, and other non-severe impairments. *Id.* As outlined in the ALJ's opinion, these conditions "did not exist for a continuous period of at least 12 consecutive months, were responsive to medication and/or treatment, did not require any significant medical treatment, and did not result in any continuous functional limitations." *Id.* The ALJ concluded Ferida did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. *Id.* at 16-18. The ALJ specifically considered listings 12.04, 12.06, and 12.15 for mental impairments. *Id.* Under the "Paragraph B" analysis, the ALJ found Ferida had moderate limitations in all four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*

The ALJ determined Ferida had the RFC to perform a full range of work at all exertional levels but with the following limitations: (1) Ferida is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights; (2) should avoid concentrated exposure to unguarded hazardous machinery (3) should never climb ladders, ropes, or scaffolds; (4) limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work

setting, and work requiring the exercise of only simple judgment; (4) she is not capable of multitasking, or work requiring considerable self-direction; (5) can work at a consistent production pace; (6) is precluded from work involving direct public service, in person or over the phone; (7) is unable to work in crowded, hectic environments; and (8) can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks. *Id.* at 18-23. After posing hypotheticals to the VE, the ALJ concluded Ferida could perform past relevant work as a dining room attendant/bus person, as well as work as a scrap sorter, cleaner industrial, and dishwasher. *Id.* at 23-24, 46-52. As a result, the ALJ found Ferida not disabled. *Id.* at 24-25. The Appeals Council denied Ferida's request for review. *Id.* at 1-3.

### Discussion

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform their former occupation; and (5) whether the claimant is unable to perform any other available work in light of their age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

In support of her request for reversal and remand, Ferida argues: (1) the ALJ's evaluation of Dr. Kireem's[2] opinion violated 20 C.F.R. § 404.1520c and was not supported by substantial evidence; (2) the ALJ erred in evaluating Ferida's RFC; and (3) the ALJ improperly evaluated Ferida's subjective symptoms. *See generally* Doc. [13]; Doc. [20]. Having considered these arguments and the record, the Court finds the ALJ did not commit reversible error as the ALJ's decision is supported by substantial evidence.

## I. Treating Psychologist's Opinion

For her first contention, Ferida challenges the ALJ's evaluation of Dr. Kireem's 2020 medical opinion. Doc. [13] at 5-8; Doc. [20] at 2-7. Specifically, Ferida argues the ALJ's rejection of Dr. Kireem's opinion: (1) violated 20 C.F.R. § 404.1520c by incorrectly weighing the supportability and consistency of the opinion; (2) mischaracterized substantial evidence; and (3)

---

[2] The parties' briefs mention Dr. Amr Kireem who also goes by Dr. Amr Abedlkireem. Doc. [13] at 5; Doc. [19] at 1, n.1; Doc. [20] at 2, n.1. This is supported by the record. R. 582-94, 1079-1132. For clarity and consistency, the Court will refer to the treating psychologist in line with the ALJ's opinion as Dr. Kireem. R. 13-25.

improperly discounted the treating relationship as "infrequent and conservative." *Id.* The Court finds these arguments lack merit.

As noted by Ferida, the ALJ's evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors. *See* 20 C.F.R. § 404.1520c(a), (c). While an ALJ must explain how they considered the factors of supportability and consistency in their decision, they are not required to explain how they considered the other factors. 20 C.F.R. § 404.1520c(b)(2). Additionally, "[t]he court applies a common-sense reading to the entirety of an ALJ's decision." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). In doing so, the Court reads "the ALJ's decision as a whole." *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). "[An] ALJ is not required to mention every piece of evidence." *Combs v. Kijakazi*, 69 F.4th 428, 435 (7th Cir. 2023). Instead, an ALJ must minimally articulate their reasoning. *Rice*, 384 F.3d at 371 ("An ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability.") (cleaned up); *see also Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (minimal articulation is "a very deferential standard that we have, in fact, deemed 'lax'").

Ferida initially argues the ALJ's analysis of Dr. Kireem's opinion violated 20 C.F.R. § 404.1520c by incorrectly considering the supportability and consistency of the opinion. Doc. [13] at 5-7; Doc. [20] at 2-5. An ALJ must explain how they considered factors of supportability and

consistency in their evaluation of medical opinion evidence. 20 C.F.R § 404.1520c(b)(2). Regarding consistency, "[t]he more consistent a medical opinion ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). An ALJ may discount a physician's opinion when it is contradicted by other substantial evidence in the record. *Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021) (affirming ALJ's decision to assign little weight to the physician's opinion and great weight to the opinions of the agency doctors).[3] As previously articulated, substantial evidence is "more than a mere scintilla," and it is not for this Court to reweigh the evidence the ALJ considered. *Biestek*, 139 S.Ct. at 1154; *Reynolds*, 25 F.4th at 473.

Here, the ALJ minimally articulated their reasoning in concluding that Dr. Kireem's opinion was not consistent with their treatment notes and clinical findings. R. 16-23. First, the ALJ reviewed Ferida's psychotherapy notes from her visits with Dr. Kireem and his medical opinion testimony for consistency and supportability. *Id.* at 19-23 (*citing* 1079-1132). The ALJ observed that Ferida's mental status examination revealed she was agitated and irritable with

---

[3] Ferida also argues the ALJ "found the State agency psychologists' opinions mostly persuasive despite these physicians never having examined or treated [Ferida]." Doc. [13] at 8. However, an ALJ may rely on state agency consultants' RFC findings, who are highly qualified experts, when they are consistent with the evidence, unless later evidence would have altered the state agency consultant's RFC findings. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (state agency psychological consultants are "highly qualified and experts in Social Security disability evaluation."); *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023); *see also Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021); *Rice*, 384 F.3d at 370. Here, Ferida does not argue that later evidence, namely Exhibit 13F, would have changed the state agency psychologists' opinion. *See* Doc. [13] at 8. Instead, Ferida faults the state agency consultants' for doing their job, analyzing the medical record, and reaching RFC conclusions consistent with the medical evidence presented. This is not a basis for reversal or remand.

preoccupied thought content at a July 29, 2020, visit. *Id.* at 20 (*citing* 1079). Even so, "her appearance and dress were appropriate, her speech was normal, her affect was reactive, her insight and judgment were fair, her memory was intact, her attention was good, and her perception was unremarkable." *Id.* (*citing* 1079). The ALJ further emphasized that Dr. Kireem recorded Ferida's functional status as "mildly impaired." *Id.* (*citing* 1079). The ALJ also reviewed Dr. Kireem's psychotherapy notes from September 2020 to July 2021, where Ferida presented as irritable and agitated, with pressured speech, poor insight and judgment, poor recent memory, distractible attention, persecutory thought content, and auditory hallucinations. *Id.* (*citing* 1081, 1083, 1085, 1087, 1089, 1091, 1093, 1095, 1097, 1099, 1101, 1103, 1105, 1107, 1109, 1111, 1114-15, 1117, 1119, 1121, 1123, 1125, 1127, 1129, 1132). During those visits, Dr. Kireem described Ferida as having moderate functional impairments. *Id.* (*citing* 1081, 1083, 1085, 1087, 1089, 1091, 1093, 1095, 1097, 1099, 1101, 1103, 1105, 1107, 1109, 1111, 1114-15, 1117, 1119, 1121, 1123, 1125, 1127, 1129, 1132).

Ferida furthers her argument by alleging Dr. Kireem did not define what "Functional Status: Moderately Impaired" meant and that the term should not be used or understood in a work context and should not be equated to the Agency's definition of moderately limited.[4] Doc. [13] at 5-7, Doc. [20] at 4-5. As a result, Ferida states the ALJ incorrectly found that Dr. Kireem's medical

---

[4] Ferida underscores that the ALJ's reliance on Dr. Kireem's functional findings was again incorrect by stating that the ALJ cannot support a decision by speculation, but instead must rely on substantial evidence. Doc. [13] at 5 (*citing White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999); Doc. [20] at 4-5 (arguing the ALJ's evaluation of "moderate" limitation is unqualified and plays doctor). However, as noted, substantial evidence is "more than a mere scintilla," which is not a high burden. *Biestek*, 139 S.Ct. at 1154; *Reynolds*, 25 F.4th at 473. Here, the ALJ met their burden of substantial evidence by comparing Dr. Kireem's opinion, notes, and the entirety of the medical record. R. 16-23. As discussed in more depth in Section II *infra*, the ALJ did not play doctor but considered all the evidence as required under 20 C.F.R. § 404.1545(a)(3) when determining Ferida's RFC and the direct evidence from Dr. Kireem's psychotherapy notes. R. 17, 19-22 (*citing* 1079-1132).

opinion testimony was unsupported and inconsistent with his treatment notes. *Id.* However, the ALJ did not commit reversible error in their evaluation of Dr. Kireem's opinion evidence and treatment notes. As outlined above, the ALJ is required to evaluated medical opinion evidence for consistency and supportability. *See* 20 C.F.R. § 404.1520c. The ALJ was correct in observing that Dr. Kireem's findings of "extreme" or "marked" limitations in all four functional areas preclusive of all work were inconsistent with his treatment notes which found Ferida to have a functional status of "no more than moderately limited." R. 22 (*comparing* 582-94 *with* 1079-1132). As detailed by the ALJ, "while the terms 'mild' and 'moderate' were not specifically defined, these are not terms that are generally used to describe disabling medical conditions." R. 20. The ALJ further considered that Dr. Kireem's treatment was infrequent and conservative. *Id.* at 22. The ALJ discussed that Dr. Kireem had seen Ferida infrequently and only a handful of times prior to filling out the mental impairment questionnaire and writing a letter on July 16, 2020, to her prior employer, Home Depot, in support of a two-week hiatus from work. *Id.* (*citing* 582-94, 1078 (stating Dr. Kireem had only seen Ferida four time for two hours each day)). Moreover, the July 16, 2020, letter did not include any specific work limitations and did not provide an assessment of Ferida's functional limitations, simply stating Ferida would need some time off. *Id.* (*citing* 1078). Thus, the ALJ did not err in finding Dr. Kireem's medical opinion was inconsistent with his treatment notes. Ferida expands this point by claiming that it was the ALJ's responsibility to clarify with Dr. Kireem that the functional status "referred to a patient's capability to work or that moderately impaired equates to moderately limited as understood by the Agency." Doc. [13] at 5. An ALJ is not required to recontact a doctor for additional evidence or medical expert testimony unless the evidence is inadequate to determine whether the claimant is disabled. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In *Skarbek*, the Seventh Circuit held the ALJ was

not required to recontact a treating physician when there were inconsistencies between the medical evidence and the physician's opinion to obtain additional evidence or testimony, as the entirety of the evidence was adequate for the ALJ to determine Skarbek was not disabled. *Id.* As in *Skarbek*, the evidence here, including Ferida's testimony, the physicians' opinions, and the medical record, was adequate for the ALJ to find Ferida not disabled, and the ALJ acted within their discretion in deciding not to seek clarification regarding how Dr. Kireem defined "Functional Status: Moderately Impaired". *Id.*; R. 22 (*comparing* 582-94 *with* 1079-1132).

Next, the ALJ weighed Dr. Kireem's testimony and records, with Ferida's testimony, and the entirety of the medical record finding substantial evidence that Dr. Kireem's opinion was unpersuasive and inconsistent. R. 16-23. The ALJ began by considering Ferida's hearing testimony. *Id.* at 19. The ALJ explained that Ferida testified she was unable to work due to mental impairments, including daily flashbacks, images of her deceased father, inability to sleep, crying spells, and fear that someone will kill her. *Id.*[5] The ALJ found it notable that Ferida cried during the hearing. *Id.* Further, the ALJ outlined Ferida's testimony that she cannot drive, and has not since June 2020, cannot do chores, sees blood when using a cooking knife, and visits a psychologist two to three hours a week. *Id.* Ferida also noted that while she takes medication, it only slightly

---

[5] Ferida further raises that Dr. Kireem noted Ferida faced serious limitations in "completing household duties; independently initiating, sustaining, or completing tasks; understanding, carrying out, and remembering instructions; responding appropriately to supervision and coworkers; performing tasks on an autonomous basis; and performing tasks on a sustained basis without undue interruptions or distractions." Doc. [13] at 6 (*citing* 590-91). The Court observes that the ALJ directly discussed the psychiatric report and mental impairment questionnaire filled out by Dr. Kireem in relation to Ferida's ability to function daily. The ALJ noted the psychiatric report and mental impairment questionnaire were "inconsistent with [Dr. Kireem's] treatment notes that indicate the claimant's functional status is no more than moderately limited and is able to generally tend to her activities of daily living." R. 22 (*citing* 287-300; 582-94, 1079-1132). The ALJ compared Dr. Kireem's reports (*id.* at 582-94) with Ferida's own function report which indicated she could perform activities of daily living (*id.* at 287-300 (Ferida noted she has no problems with personal care, cooked for her son, assisted with housework, and went outside daily)). As the ALJ reviewed Dr. Kireem's opinion for supportability and consistency, the Court does not find reversible error. 20 C.F.R. § 404.1520c.

helps with symptoms. *Id.* After considering testimony evidence, the ALJ reviewed the full medical record, explaining that the record did not support the alleged loss of functioning. *Id.* The ALJ found that while the June 24, 2020 therapy notes reflected Ferida presented crying and stated she could not sleep, the mental status examination exhibited appropriate thought content, fair insight, fair judgment, good memory, and no gross cognitive deficits. *Id.* (*citing* 519-21). Additionally, Ferida's own function report stated she was able to care for her son, tend to personal care needs, prepare meals, do household chores, count change, knit, talk on the phone, and go shopping. *Id.* at 17 (*citing* 287-300). The ALJ further considered the opinions of the state agency physicians, whose assessments supported the ALJ's determination that Ferida can maintain a full-time work schedule. *See id.* at 21-22 (*citing* 54-89, 94-133 (finding Ferida retained mental capacity to understand and remember multi-step instructions, interact with others with reduced social demands, and adapt to simple routine changes)); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (state agency psychological consultants are "highly qualified and experts in Social Security disability evaluation."); *Rudicel v. Astrue*, 282 F. App'x 448, 452 (7th Cir. 2008). In *Rudicel*, the Seventh Circuit affirmed the ALJ's decision to give greater weight to the state agency consultant over a physician's medical opinion evidence despite Plaintiff's assertion that new evidence exhibited a worsening condition, as there was substantial evidence supporting the ALJ's decision. *Id.* Here, the ALJ gave the state agency consultants' opinion greater weight, and, as discussed in Section II *infra*, added additional restrictions. The ALJ considered the supportability and consistency of Dr. Kireem's medical opinion evidence with his own treatment notes, Ferida's testimony at the hearing and in her function report, as well as the complete medical record, properly weighing all of the medical opinion evidence. As the ALJ's analysis of Dr. Kireem's opinion complied with 20 C.F.R. § 404.1520c the Court does not find reversible error.

Second, Ferida argues the ALJ selectively omitted, cherry-picked, and mischaracterized certain evidence while ignoring evidence favorable to Ferida. Doc. [13] at 6-8, Doc. [20] at 2-3, 6-7. Specifically, Ferida argues that the ALJ selectively discussed evidence by ignoring Dr. Kireem's psychotherapy progress notes and mischaracterized evidence by finding Ferida capable of activities of daily living. *Id.* As Ferida recognized, an ALJ need not discuss every piece of evidence in the record; they must simply not ignore an entire line of contrary evidence. *See* Doc. [13] at 6-7; Doc. [20] at 2-3; *see also Sherman v. O'Malley*, 2023 WL 8868065, at *2 (7th Cir. 2023) ("An ALJ 'does not need to discuss every piece of evidence in the record' but must confront evidence that 'does not support [their] conclusion.' *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see also Deborah M. v. Saul*, 994 F.3d 785, 788–89 (7th Cir. 2021) (finding no error where omitted evidence 'did not reveal any substantially different information' than addressed evidence)."). Here, the ALJ did not ignore a line of contrary evidence. As discussed above, the ALJ assessed Dr. Kireem's psychotherapy notes from July 2020 to July 2021. *Id.* at 19-23 (*citing* 1079-1132).[6] The ALJ compared visits where Ferida presented as irritable and agitated, with pressured speech, poor insight and judgment, poor recent memory, distractible attention, persecutory thought content, and auditory hallucinations, with instances where Ferida exhibited appropriate dress, normal speech, memory, judgment, perception, and insight. *See, e.g.*, R. 20 (*citing* 1079, 1081, 1083, 1085, 1087, 1089, 1091, 1093, 1095, 1097, 1099, 1101, 1103, 1105, 1107, 1109, 1111, 1114-15, 1117, 1119, 1121, 1123, 1125, 1127, 1129, 1132). The ALJ weighed

---

[6] Ferida further contends "[t]he ALJ did not explore the treatment notes themselves in evaluating Dr. [Kireem's] opinion, and those treatment notes documented the extensiveness of [Plaintiff's] impairments." Doc. [13] at 8; *see also* Doc. [13] at 6-7. This is incorrect. The ALJ cited multiple times to Dr. Kireem's notes, grappling with the findings that Ferida was tense, agitated, and experienced auditory hallucinations, as well as Dr. Kireem's repeated diagnosis of only moderate functional limitations. R. 19-22 (*citing* 1079-1132). Thus, this argument does not hold water.

contrary evidence, including Ferida's mental health symptoms, and it is not for the Court to reweigh this evidence.

Similarly, Ferida alleges the ALJ mischaracterized or cherry-picked evidence of her daily living. Doc. [13] at 7-8; Doc. [20] at 6-7. The ALJ noted that Ferida's own function report stated she was able to care for her son, tend to personal care needs, prepare meals, do household chores, count change, knit, talk on the phone, and go shopping. R. 17, 22 (*citing* 287-300). The ALJ compared Ferida's testimony that she had difficulty focusing, experienced flashbacks, hallucinations, and cried at counseling sessions, with the record evidence that there were no incidents of emotional outbursts, and that Ferida exhibited she could attend medical visits alone and answer questions in a coherent and appropriate manner. *Id.* at 17, 22 (*comparing* 287-300 (Ferida's function report) *with* 507-24, 1079-1132 (therapy notes)). The ALJ did not selectively omit, mischaracterize, or cherry-pick evidence. Instead, the ALJ reached a conclusion supported by substantial evidence after wholistically reviewing the record evidence supporting and contradicting Ferida's testimony. *See Latkowski v. Barnhart*, 93 F. App'x 963, 973-74 (7th Cir. 2004) (affirming ALJ's opinion as the ALJ did not mischaracterize evidence and supported their finding with substantial evidence). Thus, the ALJ did not commit a reversible error.

Third, Ferida argues the ALJ improperly discounted Dr. Kireem's opinion on the basis that Ferida's treatment was "somewhat infrequent and conservative." Doc. [13] at 8; Doc. [20] at 5-6. It is proper for an ALJ to consider treatment and other measures when assessing Ferida's symptoms. 20 C.F.R. § 404.1529(c)(3). Here, the ALJ minimally articulated their reasoning that the treatment was somewhat infrequent and conservative. As discussed above, the ALJ considered the psychiatric report and mental impairment questionnaire that Dr. Kireem filled out in October 2020. R. 20, 22 (*citing* 582-94). Within the consideration of Dr. Kireem's opinion, the ALJ

reviewed the consistency and frequency that Ferida saw Dr. Kireem. *See id.* at 20, 22 (*citing* 1079-1132 (psychotherapy records from Dr. Kireem)). First, the ALJ noted Dr. Kireem had seen Ferida infrequently and only a few times prior to filling out the mental impairment questionnaire dated in October 2020. *Id.* at 22 (*citing* 582-94) (noting Dr. Kireem first saw Ferida in July 2020 and last saw her in October 2020). Second, the ALJ observed that Dr. Kireem had only been treating Ferida for two weeks when he wrote a letter on July 16, 2020 to her prior employer, Home Depot, in support of a two-week hiatus from work. *Id.* (*citing* 582-94, 1078) ("[T]his opinion was experessed [*sic*] only a couple of months after the alleged onset date."). Additionally, the July 16, 2020 letter did not include any specific work or functional limitations. *Id.* (*citing* 1078). Further, the ALJ observed that the psychotherapy records reflect that Ferida was seen somewhat irregularly and infrequently during the entirety of the record, as there was a break in treatment from November 16, 2020 to January 4, 2021. *Id.* at 20 (*citing* 1079-1132). The ALJ also observed that in April 2021, Ferida was advised to see psychiatry for possible anti-psychotic medicine. *Id.* at 21 (*citing* 1105). However, there is no evidence Ferida complied with that recommendation exhibiting a lack of additional treatment.[7] *Id.* The ALJ also reviewed other medical records and found no "mention of disabling psychiatric symptoms." *Id.* at 21 (*citing* 715-1076 and noting that "[a]lthough the claimant was presenting for treatment of physical complaints, it is reasonable to expect to see some mention of severe psychiatric medically determinable impairments.").

In support of her argument, Ferida notes the number of times she visited with Dr. Kireem, which increased from once a month to once a week over the entire course of treatment. Doc. [13]

---

[7] Ferida supports her argument by citing *Rosalinda B. v. Kijakazi*, for the holding that the ALJ erred by describing significant treatment as routine and conservative, but failing to identify what more aggressive treatment would have been available and appropriate. Doc. [20] at 5 (*citing* 2021 WL 5997979, at *9 (N.D. Ind. Dec. 20, 2021)). However, here, the ALJ found instances where more treatment was recommended and Ferida did not follow up or seek out additional help. *See id.* at 21 (*citing* 1105) (observing Ferida was recommended for a psychiatry follow up but did not comply). Thus, this case is inapplicable to these facts.

at 8; Doc. [20] at 5-6.  In total, Dr. Kireem saw Ferida twenty-seven times in a thirteen-month period or, on average, about twice a month. *Id.* at 1079-1132.  While the ALJ does not specifically address the number of times Ferida was seen by Dr. Kireem or that the frequency increased, this error is not reversible as the ALJ did not rely solely on the conservative and infrequent treatment in finding the record evidence did not support Dr. Kireem's significant limitations. *See Ruby Y. v. Kijakazi*, 2022 WL 1457833, at *5 (N.D. Ill. May 9, 2022) (affirming the ALJ's discounting of a physician's opinion despite the ALJ's analysis error as "the ALJ specifically relied on several other legitimate examples of why the record evidence did not support [the physician's] significant limitation."). As discussed in detail above, the ALJ analyzed Dr. Kireem's opinion for consistency and supportability with the medical record and his own treatment notes and found Dr. Kireem's opinion to be unsupported and inconsistent. *See supra* 5-10.  Thus, any error the ALJ may have made in this regard was harmless given the other valid reasons adequately supported by the record that the ALJ gave for discounting Dr. Kireem's opinion. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2020) (emphasizing harmless error standard applied to judicial review of administrative decisions).

**II.  RFC Assessment**

For her second contention, Ferida challenges the ALJ's evaluation of her RFC.  Ferida argues that the ALJ: (1) did not provide a narrative discussion describing how the evidence fit the ALJ's conclusion; (2) improperly added RFC limitations beyond what the state agency physicians found; and (3) failed to account for moderate restrictions in concentration, persistence, or pace.

The RFC is the most physical and mental work that Ferida can perform despite her limitations. 20 C.F.R. § 404.1545(a)(1); *Madrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). An ALJ assesses an RFC based on all relevant medical and other evidence. 20 C.F.R. §

404.1545(a)(3). In general, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Additionally, when reaching their RFC assessment, the ALJ must "articulate at some minimal level [their] analysis of the evidence." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Ultimately, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. An ALJ has the "final responsibility" for determining a claimant's RFC. *See* 20 C.F.R. § 404.1527(d)(2); *Fanta v. Saul*, 848 F. App'x 655, 658 (7th Cir. 2021).

Ferida begins by arguing the ALJ failed to comply with SSR 96-8p, which requires the ALJ to set forth a logical explanation and narrative discussion describing the effects of Ferida's symptoms on her ability to work. Doc. [13] at 8-10, 12-13[8]; Doc. [20] at 7, 10-11. Under SSR 96-8p an RFC is an assessment of an individual's capacity to sustain full time work. The ALJ assesses an RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). When assessing an individual's RFC and mental abilities, including how impairments and symptoms may cause mental limitations in the workplace, the ALJ first assesses the nature and extent of the mental limitations and restrictions, and then determines the RFC. *See* 20 C.F.R. § 404.1545(c). Here, the ALJ reviewed each of the broad function areas set out for evaluating mental disorders, logically explained via a narrative discussion of Ferida's symptoms and how they led to the RFC finding.

---

[8] Ferida takes issue with the ALJ's consideration of treatment notes from Dr. Abraham prior to the alleged disability period. Doc. [13] at 12-13. However, the ALJ is required under 20 C.F.R. § 404.1545(a)(3) to weigh all relevant medical and other evidence throughout the medical record. Here, the ALJ reviewed Ferida's medical records in their entirety, including records from Dr. Abraham from February 2019, through the alleged onset of June 11, 2020 until September 2020. R. 18-23. The ALJ's review of how Ferida's conditions allegedly developed, including medical visits prior to the alleged onset, what Ferida stated about her symptoms, and what the medical record exhibited when determining the RFC limitations was not an error. *Id.*

20 C.F.R. § 404, Subpt. P, App. 1. The ALJ began by determining that Ferida's depression, anxiety, and PTSD were severe impairments. R. 16. The ALJ then reviewed listings 12.04, 12.06 and 12.15, in connection with the four "Paragraph B" criteria. *Id.* at 16-18. First, the ALJ discussed Ferida's moderate limitations in understanding, remembering, or applying information. *Id.* at 17. The ALJ contrasted Ferida's alleged memory difficulties, with incidents at appointments where her memory was noted as good, Ferida's ability to care for herself and assist in household chores, as well as her ability to attend the hearing, answer questions, and maintain a coherent appropriate conversation. *Id.* (*citing* 287-300, 507-24, 1079-1132).[9] Next, the ALJ observed that Ferida had a moderate limitation in interacting with others. *Id.* The ALJ compared Ferida's stress around others and presentation at therapy as angry and irritable, with her consistent cooperation, and ability to effectively communicate with medical professionals, her family, and others. *Id.* (*comparing* 287-300 *with* 1079-1132). Third, the ALJ discussed Ferida's moderate limitation in concentrating, persisting, or maintaining pace. *Id.* The ALJ outlined that although Ferida alleged difficulty focusing, reported flashbacks and hallucinations, Ferida was able to care for her son, take care of herself, prepare meals, do household chores, and participate in the hearing in a coherent appropriate manner. *Id.* (*citing* 287-300, 1079-1132). Finally, the ALJ discussed that Ferida had a moderate limitation in adapting and managing oneself. *Id.* The ALJ observed that Ferida cried

---

[9] In her Reply, Ferida posits SSR 16-3p "squarely prohibits an ALJ from relying entirely on objective evidence to discount the veracity of a claimant's statements or evidence of subjective symptoms." Doc. [20] at 10-11. First, the ALJ did not rely on objective evidence alone. R. 16-23. As discussed more below, an ALJ must consider several factors in evaluating a claimant's subjective symptom allegations, including the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at **5, 7-8 (Oct. 25, 2017). The Court will not overturn a credibility determination unless it is patently wrong. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Here, the ALJ considered all these different areas including Ferida's testimony regarding symptoms, the objective medical record, and the duration and frequency of treatment. R. 16-23. The credibility determination was not patently wrong and does not warrant reversal.

16

at counseling sessions and the hearing, but found the record was devoid of evidence of emotional outbursts or dysregulation. *Id.* (*citing* 287-300, 507-24). Additionally, Ferida was able to tend to her personal care needs and attend medical visits without evidence of abnormal behavior. *Id.* The ALJ further reviewed the medical record, including psychotherapy notes from Dr. Kireem, Dr. Abraham, general treatment records from Amita Health St. Alexius Medical Center, and a visit with Ferida's cardiologist, Dr. Nasir. R. 18-23 (*citing* 549, 562-65, 715-1077, 1079-1132).

Based on all of the above, the ALJ determined Ferida had the RFC to perform a full range of work at all exertional levels with the following limitations: (1) working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights; (2) should avoid concentrated exposure to unguarded hazardous machinery (3) should never climb ladders, ropes, or scaffolds; (4) limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment; (4) is not capable of multitasking, or work requiring considerable self-direction; (5) can work at a consistent production pace; (6) is precluded from work involving direct public service, in person or over the phone; (7) is unable to work in crowded, hectic environments; and (8) can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks. *Id.* at 18-23. The ALJ also explained the reasoning for these limitations. The ALJ stated that to account for the moderate limitations in understanding, remembering, or applying information and adapting and managing oneself, Ferida was limited to "routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in work setting, and work requiring the exercise of only simple judgment." *Id.* at 20-21. The ALJ also found Ferida was not capable of multitasking, or work requiring considerable self-direction. *Id.* The ALJ also explained that Ferida

was precluded from work involving direct public service, in person or over the phone, and that Ferida cannot work in a crowded, hectic environment due to her limitations in interacting with other. *Id.* at 21. The ALJ provided the requisite assessment of Ferida's capacity to sustain full time work and gave a narrative description of her symptoms, building the required logical bridge to the RFC limitations. *See Parker v. Colvin*, 660 F. App'x 478, 482 (7th Cir. 2016) (finding substantial evidence supports the RFC assessment when the ALJ adequately considered all of claimant's impairments and supported the credibility assessment with specific record evidence). Thus, there is no reversible error under SSR 96-8p.

For her second argument, Ferida argues that the ALJ erred by adding limitations beyond the findings of the state agency psychological opinions, despite finding them persuasive. Doc. [13] at 10-11; Doc. [20] at 7-10.[10] As noted above, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" when crafting the RFC but must minimally articulate their analysis and include RFC limitations supported by the medical record. *Schmidt*, 496 F.3d at 845; *Zurawski*, 245 F.3d at 888; *Reynolds*, 25 F.4th at 473. Here, the ALJ relied on the opinion of the state agency doctors for the physical RFC finding and part of the mental RFC. R. 18-23. Then the ALJ added more restrictive RFC limitations based on their review of the medical evidence. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence."); *see also Karla*

---

[10] Ferida cites to cases supporting the notion that the ALJ played doctor or created an evidentiary defect. Doc. [20] at 8-10 (*citing Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010), *Engstrand v. Colvin*, 788 F.3d 655, 660-61 (7th Cir. 2015) *among others*). As the ALJ did not reject all opinion evidence, but relied on the state agency consultants, there was no evidentiary defect. *See* R. 18-23. The Court also finds that under 20 C.F.R. § 404.1527(d)(2) the ALJ did not play doctor but reviewed the overall medical record in determining the RFC, as is required. The ALJ has final responsibility for determining Ferida's RFC and these cases are unpersuasive.

*J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument."). The ALJ found the state agency medical consultants persuasive. R. 21-22. However, the "state agency consultants did not have the benefit of reviewing the record in its entirety including the claimant's psychotherapy notes." *Id.* at 21 (*citing* 1079-1132). Thus, the ALJ, charged with crafting the RFC, added limitations after reviewing the full record. *Id.*

> "For example, in light of the claimant's reports of flashbacks and hallucinations, [the ALJ] found the claimant moderately limited in her ability to understand, remember, or apply information, as well as in her ability to adapt or manage herself. However, as the claimant's psychologist noted that the claimant's functional status was only moderately limited, more restrictive limitations are not supported by the record." *Id.* at 21-22.

Contrary to Ferida's argument, the ALJ did not reject the opinions of the state agency consultants', but relied on their expertise and then found additional limitations based the ALJ's review of the medical record evidence. *Id.* at 18-23, 54-89, 94-133 (*compare* state agency consultants' RFC where Ferida could understand multi-step instructions, concentrate for a normal work period, make adequate decisions, interact sufficiently with reduced social demands, adapt to simple, routine changes, *with* ALJ's RFC drastically limiting Ferida *see supra* 17-18). The ALJ has final authority over the RFC and underwent a reasoned analysis of the entire record when implementing supplemental limitations, as required. *See* 20 C.F.R. § 404.1527(d)(2); *Burmester*, 920 F.3d at 510.

Ferida also purports that the ALJ failed to properly evaluate the impact of her mild limitations in concentration, persistence, or pace in the RFC. Doc. [13] at 11-12[11]; Doc. [20] at 10.

---

[11] Ferida stated that the ALJ erred because "[t]he ALJ stated in his decision that more restrictive findings were not warranted because 'there are no specific limitations in the objective medical evidence exceeding the [RFC].'" Doc. [13] at 12. Ferida goes on to note Dr. Kireem found her incapable of work. *Id.* This argument is unpersuasive. As noted above, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds*, 25 F.4th at 473. Here, Dr. Kireem found Ferida incapable of work, however as detailed above this finding was unsupported by the medical record and Dr. Kireem's own

In support of her argument regarding concentration, persistence, and pace, Ferida states that the ALJ was incorrect in finding she could work at a consistent production pace and that a limitation to simple work is insufficient. Doc. [13] at 11; Doc. [20] at 10. While the Seventh Circuit has found that reducing an individual to "simple, routine tasks" can be lacking at capturing limitations of concentration, persistence, or pace, that is not the entire analysis. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010). A limitation to simple, repetitive tasks may, under appropriate circumstances, adequately translate to a rating of moderate limitations in concentrating, persisting, or maintaining pace. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *Burmester*, 920 F.3d at 511; *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019)). The Seventh Circuit has held that one such appropriate circumstance occurs when the plaintiff fails to identify further limitations, supported by the record, that should have been included in the RFC. *Jozefyk*, 923 F.3d at 498; *Dudley*, 773 F. App'x at 842. Ferida does not set forth in her briefing any additional RFC limitations that the ALJ should have included. Instead, Ferida simply argues that the ALJ should have been found her symptoms to be work-preclusive. Doc. [13] at 11-12; Doc. [20] at 10. As discussed at length above, Ferida's RFC limitations were supported by substantial evidence and explained in a logical narrative form as required by SSR 96-8p. *See supra* 14-17 (*citing* R. 16-23 (reviewing the broad function areas and evaluating Ferida's symptoms based on testimony, record evidence, and medical opinion evidence)). Crucially, the ALJ's RFC finding was more robust than the state agency consultants recommended. R. 18-23, 54-89, 94-133. For example, in *Jozefyk*, the Seventh Circuit affirmed the ALJ's RFC restrictions of simple, repetitive tasks and limited interactions with others to account for the claimant's moderate concentration, persistence, and pace limitations. 923 F.3d at 498. The

---

treatment notes. *See supra* 5-10. The ALJ acted within their purview to determine the RFC based on the supported record evidence.

Seventh Circuit found that such language was sufficient because the record showed mental limitations occurred only when the claimant was interacting with others, and because there was a lack of testimony and medical evidence supporting further limitations. *Id.* Similar to *Jozefyk*, the ALJ accounted for Ferida's difficulty concentrating, persisting, and maintaining pace by limiting her to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in work setting, or work requiring the exercise of only simple judgment, no multitasking or work with considerable self-direction, ability to work at a consistent pace, but inability to work on tandem tasks among other restrictions. R. 18-23. These limitations are well beyond what the state agency consultants proposed and exhibit a reasoned consideration of the evidence. *Burmester*, 920 F.3d at 510. Moreover, Ferida has not proposed what further limitations would be appropriate, which also diminishes the strength of her argument. *Rosario A. v. Kijakazi*, 2022 WL 17357435, at *6 (N.D. Ill. Dec. 1, 2022) (*citing Jozefyk*, 923 F.3d at 498); *Jill A. W. v. Kijakazi*, 2022 WL 225879, at *11 (N.D. Ill. Jan. 26, 2022) (upholding ALJ's RFC when plaintiff did not identify specific additional work restrictions that should have been included to account for migraines). Thus, the ALJ did not err in crafting Ferida's concentrating, persisting, or maintaining pace RFC restrictions.

### III.    Subjective Symptoms

For her final contention, Ferida argues the ALJ failed to properly analyze her subjective symptoms violating SSR 16-3p by excluding substantial evidence. Doc. [13] at 13-15; Doc. [20] at 11-15. Ferida claims the ALJ improperly consider her psychiatric treatment and did not analyze if her symptoms were consistent with the evidence. *Id.* In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the

claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at **5, 7-8 (Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to [their] ruling." *Benito M. v. Kijakazi*, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (*quoting Grotts*, 27 F.4th at 1278). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Ferida argues the ALJ did not properly evaluate Ferida's psychiatric treatment, because the ALJ was purportedly incorrect that: (1) Ferida failed to complain to other providers about her mental symptoms, and (2) Ferida did not attend a follow-up visit. Doc. [13] at 13-14; Doc. [20] at 12. Ferida's first argument is unpersuasive. As discussed above, the ALJ reviewed the entirety of the medical record in evaluating Ferida's RFC, mental impairments, and subjective symptoms. R. 16-23. In reviewing the record evidence, the ALJ observed that claimant presented to Dr. Abraham on May 7, 2021, reporting depression, hopelessness, poor appetite, and trouble concentrating. *Id.* at 20 (*citing* 653, 655, 839). The ALJ found on a full review of the medical record that "general treatment records… do not reflect any mention of disabling psychiatric symptoms." *Id.* at 21 (*citing* 715-1077). However, Ferida raises one instance where she reported depression to her general treatment provider, Dr. Abraham, as a means of contradicting the ALJ's analysis. Doc.

[13] at 13-14.  This single visit with Dr. Abraham does not contradict the ALJ's analysis that the general treatment records do not reflect disabling psychiatric symptoms. *Id.* at 20-21. Additionally, the symptoms that were present in the general treatment records were accounted for in the RFC. *See Denton v. Astrue*, 596 F.3d 419, 423-24 (7th Cir. 2010) (affirming ALJ's opinion when ALJ considered the impact of depression and related symptoms in the RFC). The ALJ analyzed the one instance among 362 pages of treatment notes where Ferida reported mental health concerns, namely depression, poor appetite, and trouble concentrating and used this finding in making their RFC determination. R. 20-21.  This is not a contradiction, and the reasoned analysis of Ferida's mental health symptoms throughout the medical record further supports the ALJ's finding.

Second, Ferida argues the ALJ erred by putting weight into Ferida's lack of a follow-up visit with psychiatry. Doc. [13] at 13; Doc. [20] at 12-13, 14.  The ALJ followed 20 C.F.R. § 404.1529(c) by considering Ferida's symptoms, including treatment, daily activities, and the medical record. SSR 16-3p, 2017 WL 5180304, at **5, 7-8 (Oct. 25, 2017).  However, an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." SSR 96-7p, 1996 WL 374186, at *7 (Jul. 2, 1996); *see also Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).  The ALJ noted that Ferida did not follow up with psychiatry for the possibility of anti-psychotic medication. *Id.* at 21 (*citing* 1105).  In response, Ferida argues this was due to cost, which Dr. Kireem's treatment notes discussed only two pages later. Doc. [13] at 13; Doc. [20] at 12-13; R. 1107.  However, the ALJ did not rely solely on Ferida's lack of follow up to conclude that Ferida's symptoms and limitations were not as severe as she claimed. R. 16-23 (analyzing the objective medical record, Ferida's symptoms, and the

medical opinion evidence). Thus, any error the ALJ may have made in this regard was harmless given the other valid adequately supported reasons the ALJ gave for discounting Ferida's subjective statements, namely the lack of support in the medical record and Ferida's own function report stating that Ferida was able to care for her son, take care of herself, prepare meals, do household chores, and participate in the hearing in a coherent appropriate manner. R. 16 (*citing* 287-300, 1079-1132); *see also Jill A. W.*, 2022 WL 225879, at *9; *Wilder*, 22 F.4th at 654 (emphasizing harmless error standard applied to judicial review of administrative decisions); *Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (cleaned up) ("Not all of the ALJ's reasons must be valid as long as enough of them are, and here the ALJ cited other sound reasons for disbelieving Halsell."). Overall, the Court concludes that the ALJ's subjective symptom finding is supported by more than a mere scintilla of evidence and a reasonable mind can accept the ALJ's conclusion.

Finally, Ferida reiterates that the ALJ failed to analyze Ferida's significant symptom testimony and consider whether symptoms were consistent or inconsistent with the evidence in violation of SSR 16-3p. Doc. [13] at 14-15; Doc. [20] at 13-15. This is factually inaccurate. The ALJ explained that Ferida alleged difficulty with memory, focus, that she gets stressed around others, that she has flashbacks and hallucinations, that Ferida sees images of her deceased father, cannot sleep, cries, and is terrified someone will kill her. R. 16-23. As outlined above, the ALJ weighed this testimony in coming to the RFC determination. *See supra* 14-18; R. 16-23. Additionally, the ALJ directly considered whether Ferida's statements about her symptoms were consistent with the record evidence. *See supra* 14-18; R. 16-23. The ALJ analyzed Ferida's statements, daily activities, and the other record evidence to determine consistency and supportability of the medical opinion evidence. *See supra* 5-10. And, as previously discussed, the

ALJ did not cherry-pick evidence, but confronted contrary evidence including Ferida's reports of inability to focus and poor memory with treatment notes showing that Ferida had good memory, fair judgement, and no cognitive deficits. *See supra* 10-12; R. 19 (*citing* 521). The ALJ did not rely on their own lay intuition or improperly evaluate the record, but took the time to review all the evidence, including Ferida's subjective symptoms, and determined necessary RFC limitations beyond those provided for by the state agency physicians. R. 16-23; *see supra* 15-19. Therefore, there is no cause for remand and reversal.

## CONCLUSION

For the reasons stated above, Plaintiff's request for reversal of the ALJ's decision is denied [13], the Commissioner's Motion for Summary Judgment [18][19] is granted, and the ALJ's decision is affirmed. The Clerk is directed to enter judgment in favor of the Commissioner and against Plaintiff.

**SO ORDERED.**

Dated: March 5, 2024

_____
Sunil R. Harjani
United States Magistrate Judge